## Emanuel *et al.* Appellants, *v.* Norcum and Burwell, Administrators.

All debts contracted by an administrator, who is lawfully carrying on a farm, and completing a crop growing at the time of the death of the testator, or intestate, so far as such contracts are for necessaries, are privileged claims on the income of the place, although not on other property; and a subsequent administrator is bound to pay such debts. But if the proceeds of the crop have been appropriated to the payment of debts due from the deceased in his life-time, or have been declared assets, then such creditor is entitled to payment out of any other fund of the estate.

Where an executor derives his authority from the will, he is authorized to take charge of the estate before he qualifies; and expenses which he incurs in taking care of the estate are a charge upon it.

APPEAL from the probate court of Warren county.

The appellants filed their petition in the probate court, to enforce payment of an account against the estate of Alexander McNiell. The petition stated that Alexander McNeill died in May, 1839, having first made his will, leaving his brother, Hector McNeill, his executor. That said Hector, as executor, continued to cultivate the crop then growing on the plantation of his testator. That appellants supplied the estate with articles essentially necessary to enable the executor to proceed to complete the crop, such as oils, medicines, and other supplies. That said Hector was removed in 1840, by the probate court of Warren county, as executor, without having paid appellants the amount of their account; and letters of administration *de bonis non*, with the will annexed, were granted to F. Norcom and A. Burwell, the present respondents. Appellants alleged failure and refusal of the defendants to pay their account for the supplies so furnished, and insist on their right to be paid the same as a preferred claim. The probate court decreed against the claim, from which an appeal was taken.

BARNETT, for appellants.

It is insisted by the appellants, that their account be deemed a preferred one. It is for articles supplied the executor, H. McNeill, to enable him to go on and finish the crop growing at the time of the death of his testator, pursuant to the provisions of our law in relation to the estates of decedents. Howard & Hutch. 402, 403, sec. 63.

The executor, in completing the crop, was acting as the agent of the creditors and legatees, and as a trustee for them. The section referred to expressly provides, that the proceeds of the crops shall be assets in the hands of the executor. The expenses of feeding and clothing the slaves, and all other incidental expenses, being first deducted. The creditors of the estate and legatees can demand no more of the executor than the nett proceeds of the products of the plantation; that is, after deducting all necessary expenses for cultivating and getting the crop to market. There are certain charges, which in the nature of the thing have a preference to every debt, such as the charges of procuring administration, &c. and the charges and disbursements made for the benefit of the estate. 4 Hen. and Munf. 76. As the executor is acting as a trustee for the benefit of creditors and others interested, these cannot claim more than the surplus of the estate, after defraying all necessary expenses. 4 Hen. & Munf. 57.

The appellees refuse payment on the ground that the account of the appellants was not contracted by Alexander McNeill during his life; whilst the appellants insist for the same reason, (to wit, because it is for supplies furnished his estate after his death,) they are entitled to the full amount of it, and not to a ratable portion only with the general creditors of the said Alexander McNeill, who were such at the time of his death. The appellees insist that the account of the appellants is a personal charge against Hector McNeill, individually, and not against the estate of said Alexander. Who, it is asked, received the benefit of the supplies furnished by the appellants? The estate of Alexander McNeill, it must be admitted; or, in other words, the creditors and legatees of said Alexander, into whose pockets the proceeds of the crop went. But the appellees say that at the time of the removal of Hector McNeill he was largely indebted to the estate on his administra-

tion account. Admit this, but does it at all change the condition of the appellants in reference to their account. If Hector, while acting as executor of Alexander McNeill, wasted the assets of the estate, are the appellants to be prejudiced by the fact? They never undertook for Hector McNeill that he should well manage the estate of his testator, or to stand in the relation of securities for him. The securities in his bond are perhaps amply able to indemnify the creditors and others interested in the estate of Alexder McNeill against his tortious acts. If not, the creditors should have seen that he gave good and sufficient security. If he did not, it was their fault and folly, as the law gave them ample power to compel him so to do. To persons of limited means and individually irresponsible, however trustworthy, large estates are frequently committed and kept together for years. At some periods of the year, they are compelled to contract debts, to be paid by the proceeds of the coming crop. Should a representative thus situated, chance to die or be removed from office, would it not be offensive to every principle of justice that the persons who had supplied the estate of his testator or intestate with necessaries should be thrown upon the estate of such executor or administrator for payment, wholly insolvent as it might be, and the estate of such testator or intestate, the beneficiary party, be wholly exempt from their claims? It surely is unnecessary to press this argument any further.

In regard to the jurisdiction of the probate court in this case, the court is respectfully referred to the several cases in 2d and 3d Howard, where a full and so recent examination of the jurisdiction of the courts of probate is had, that it is only deemed necessary here to allude to them. The appellants availed themselves, perhaps, of the only remedy they had. The estate of McNeill had been declared insolvent. No suit at law could, at the filing of the bill, have been brought against the appellees; if at any time, that would have been the proper forum, unless the appellees had consented to have such claim settled in that way. See How. & Hutch. sec. 80, pp. 409–10, marginal note: "No action to be brought against executors," &c. 1 How. 95.

The appellees never consented to have the appellants' claim so settled. Hector McNeill certainly would have had the right to

pay the appellants their account, and to retain that amount against the creditors of Alexander McNeill's estate.   The appellants claim to be substituted to his rights, as he did not do so.   The objection of the appellees to this, and the principle they insist on, that, before appellants can be substituted to the rights of said Hector, they must take upon themselves all his burdens, and first meet his indebtedness to the estate of said Alexander, has been sufficiently answered before, by appellants insisting that they should not be looked upon in the light of securities for the acts of said Hector, or be in any manner prejudiced by his wrongful acts.   The articles supplied by the appellants were necessaries; so admitted, or at least not denied, by the appellees.   It is so admitted in the decree of the probate judge, as well as that the same was satisfactorily and fully proved; that is, if any thing can be collected from so extraordinary a document—to which this court is particularly referred, for the reasons operating upon the mind of his honor the judge of probate, when deciding the case below.

G. S. YERGER on the same side.

The necessaries having been furnished to complete the crop, the act of assembly authorizing the executor to finish it, from necessary implication, gives a preference of payment to debts contracted for what was necessary to finish it.   It says, the proceeds, after payment of expenses, shall be assets; *ergo*, the necessary expenses are first to be paid out of it.

1. Necessary and proper counsel fees will be allowed out of the estate.   Lindsey *v.* Howerton, 2 H. & M. 9; Sterrett's appeal, 2 Penn. Rep. 426; 2 Wms. on Ex'ors, 1141.

2. Expenses incurred in an estate, by executors, shall be paid out of it, and be preferred before creditors.   Nunno *v.* Comm'th, 4 H. & M. 57; Carrol *v.* Cornet, 2 J. J. Marshall, 205.

The principle of substitution is wrongly applied.   The plaintiffs are not substituted to any right of the executor, but, if the executor had paid them, he would have been substituted to their rights; i. e. as the estate was liable to them, when the executor paid it, this liability was substituted, and it became liable to him.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The appellants filed their petition in the probate court, praying the allowance of an account against the estate of Alexander M'Neill, deceased, and that the defendants, as administrators, might be compelled, by decree, to pay the same.

The petition states that McNeill died in May, 1839, leaving Hector McNeill executor; that part of the articles were furnished by the direction of the executor before he qualified, but that the greater portion were furnished after he had qualified, and during the year 1839; that all of the articles were necessaries for the plantation, being medicines, oils, &c. furnished for the use of the plantation, which the executor had determined to carry on.

The account was rejected by the probate court, as constituting no claim against the estate. The executor was removed in 1840, and the defendants appointed administrators *de bonis non*.

The will in this case is not set out; we can, consequently, know nothing of its provisions. The case must therefore be decided on the general law as applicable to administrators. By statute it is provided that the probate court may, if it thinks it would be for the benefit of the estate, direct the executor to finish a crop growing at the time of the death of the testator or intestate; and, in that case, the proceeds of such crop shall be assets, subject to debts, legacies and distribution, "the taxes, tools, the expenses of feeding the slaves to that time, and delivering them well clothed, being first deducted." The object, the reason and spirit of this law, evidently includes some things which are not mentioned. Whatever is essentially necessary to the making and gathering of the crop, must be included; but nothing further. This claim seems to have been created for medicines, and, as such, may be regarded as necessaries; for an administrator would be bound to take care of the health of the negroes by procuring medicines and medical aid, if necessary, although the statute does not expressly authorize these things. These are usually regarded as necessary expenditures. Such expenditures are to be paid out of the proceeds of the crop, the surplus only being assets. Creditors of this description can look to no other fund than the crop. Their claims do not become liens on any other property; and, conse-

quently, he who deals with an administrator who is lawfully man-aging a plantation, takes upon himself the risk of profits. But if the proceeds of the crop have been appropriated to the payment of debts due from the deceased in his life time, or declared to be assets, then such creditor would be entitled to payment out of any other fund, because of the benefit to the estate from a fund which rightly belonged to creditors who had furnished supplies. Cre-ditors of this description are entitled to full payment, notwith-standing the estate may be insolvent; for their claims extend, not to the property of the estate in general, but to a particular fund, or to the profits, that part only being assets which remains after deducting expenses. The statute has not contemplated a loss as the result of carrying on the farm; hence it is silent as to how the expenses are to be paid in that event. It would seem to follow, as a necessary conclusion, that he who deals with an administrator who is lawfully carrying on the farm of his intestate, undertakes the risk of profits. Perhaps the probate court, in such case, might have the power to make an allowance, having directed the admin-istrator to finish the crop, as to which we give no opinion, but we apprehend that such allowance could only be made to stand on an equal footing with other claims, if the estate should be insolvent. It appears by the record that the estate was declared insolvent, and the petition prays for an allowance to the full amount of the account out of the profits of the plantation. The record does not certainly inform us whether there were profits, but as the claim was rejected, because it was not a claim for which the estate is liable, in consequence of the supposed inability of the executor to create such liability, the inference is that it was not rejected for want of profits. The decree was erroneous in this respect, and the claim should have been allowed; but the decree should only have extended to an allowance of the account, so as to justify the administrators in making payment, precisely in the same way that allowances are usually made, in order to make them vouchers, provided the court was satisfied that the articles furnished were necessaries. This fact seems to be admitted by the decree.

It has been insisted by the answer, that the administrators are not liable for debts contracted by the executor, who alone is per-

sonally liable.   This position is not tenable.   The statute expressly declares that acts legally done by an executor or administrator, prior to the revocation of his letters, shall be valid and effectual; and that suits commenced either by or against him shall be prosecuted or defended by his successor.

If this contract was legally entered into for necessaries, it must be discharged according to the rule above laid down, and the same rule will apply to that portion of the account which was created before the executor qualified; for he was authorized to take charge of the estate, and to take care of it even before he qualified, as he derived his authority from the will.   Toller's Law of Ex'ors, 45.

The judgment must be reversed and cause remanded.